**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Dee STOKER, Defendant-Appellant.**

**No. 74–1770.**

United States Court of Appeals, Tenth Circuit.

Argued July 9, 1975.

Decided Aug. 5, 1975.

Rehearing Denied Sept. 16, 1975.

---

Keith Biesinger, Salt Lake City, Utah, for defendant-appellant.

Tosh Suyematsu, Asst. U. S. Atty. (Clarence A. Brimmer, U. S. Atty., Richard A. Stacy, Asst. U. S. Atty., on the brief), Cheyenne, Wyo., for plaintiff-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Appellant was convicted of ten counts of mail fraud and one count of conspiracy. Because of the issues raised, we need not detail the evidence concerning the offense itself.

During the trial, appellant applied in forma pauperis for the issuance of sixteen subpoenas pursuant to F.R.Crim.P 17(b). Appellant contends the trial court abused its discretion by limiting appellant to four subpoenas. Appellant further argues this limitation denied him his Sixth Amendment right to compulsory process and Fifth Amendment right to due process.

The trial commenced on August 7, 1972; appellant filed his application for subpoenas on August 11, 1972, at 10:50 a. m. A list containing the sixteen names was attached to the application. Thirteen of the persons listed were from Utah, and the remaining three were from Nevada, California and Pennsylvania. Street addresses were provided for all but the two from California and Pennsylvania. Later on August 11, after the government rested its case and the jury was excused, the trial court held a hearing concerning the necessity of the listed witnesses to appellant's defense. At that hearing, appellant testified concerning each requested witness; his statements generally contained a description of the job each person performed in one or more of the corporations involved in appellant's business ventures and often some indication of the general information possessed by each person. At the hearing's conclusion, the trial judge ruled:

> Select four that you want from Salt Lake City and we will cause subpoenas to be issued for them. You are liberty [sic] to bring all of them here at your own expense. No reference is to be drawn that the Court is satisfied as to the truthfulness of this affidavit.

Rule 17(b), F.R.Crim.P., provides in pertinent part:

> The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

A motion under Rule 17(b) is addressed to the sound discretion of the trial court. *United States v. Lepiscopo*, 458 F.2d 977 (10th Cir. 1972); *United States v. Plemons*, 455 F.2d 243 (10th Cir. 1972); *Speers v. United States*, 387 F.2d 698 (10th Cir. 1967), *cert. den'd*, 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1968). In *United States v. Julian*, 469 F.2d 371 (10th Cir. 1972), Judge Doyle analyzed Rule 17(b) in the following manner:

> . . . defendant, in order to secure witnesses at government expense, must show, first, that he is financially unable to pay the fees of the witness and, secondly, that the presence of the witnesses is necessary to an adequate defense. If he satisfies the court as to these two factors, the rule provides that the court shall order that a subpoena be issued for service on the named witness.

Clearly, a defendant has the burden of making a "satisfactory showing" to the court concerning his financial ability and the necessity of the witnesses to his defense. Appellant points to two Fifth Circuit cases [1] which quote the District of Columbia Circuit as follows:

> . . . if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments were untrue or that the request is otherwise frivolous.

---

1. *United States v. Moudy*, 462 F.2d 694 (5th Cir. 1972); *United States v. Hathcock*, 441 F.2d 197 (5th Cir. 1971).

*Greenwell v. United States*, 115 U.S.App. D.C. 44, 317 F.2d 108 (1963). Appellant argues the subpoenas should have been granted because the government did not show any untruthfulness or frivolity and the court did not find appellant had the means to pay witness fees, the number of witnesses was unreasonable, the witnesses would be cumulative, or trial delay would result if subpoenas were issued. The trial court did not specifically state the basis for its restricted grant of the subpoenas motion.

■ It is evident from the record, however, that appellant did not make a satisfactory showing as to the necessity of all sixteen of these witnesses. Appellant claims they would have bolstered his "good faith" defense. No specific averments concerning the witnesses' testimony were contained in the motion. The statements at the hearing were general in the extreme. Appellant did not state what these persons would testify about but merely indicated they possessed knowledge of selected portions of the corporations' affairs.

■ Furthermore, this request for subpoenas has to be considered within the circumstances existing when it was made. The timeliness of the request and the possible delay of the trial are factors to be considered by a trial court in considering a Rule 17(b) motion. *United States v. Jones*, 487 F.2d 676 (9th Cir. 1973). *See United States v. Moudy*, 462 F.2d 694 (5th Cir. 1972). Counsel for appellant indicated his awareness of appellant's lack of resources on the first day of trial but did not seek Rule 17(b) subpoenas at that time. In the motion, appellant said, " . . . the necessity for such witnesses has become more apparent during the course of the presentation of the case by the United States." Although this is undoubtedly a true statement, we believe the need for witnesses as to the main defense, "good faith", should have been apparent long before the last day of the government's case. In his order directing the four subpoenas' issuance the trial court

found: "That the hearing was held at 4:30 o'clock p. m., Friday afternoon . . . just prior to the closing of the offices of the U. S. Marshal's service for the weekend and that serving said witnesses would be an extremely difficult task. . . ." Also the trial judge indicated he was not satisfied with the showing of lack of financial resources. Testimony had disclosed appellant's purchase of high-cost personal items in the past.

Under these circumstances, the trial court did not abuse its discretion in limiting appellant to four of his requested sixteen subpoenas and in restricting the subpoenas to the Salt Lake City area. These limitations did not deny appellant his right to compulsory process or due process of law.

To understand appellant's remaining contentions, we briefly outline the relevant facts. On November 6, 1970, in the District of Utah, appellant and seven other individual and corporate defendants were indicted for violations of 18 U.S.C. § 1341 and § 371. An order of dismissal was formally entered on November 12, 1971, by Judge Ritter. In that order the court said:

> . . . the Court has orally in open court granted motions by defendants Thomas Dee Stoker and Edward David Powell to dismiss the Indictment heretofore filed in this matter as to them upon the ground and for the reason that there has been a *failure to diligently prosecute the action.* . . . [Emphasis added.]

That order does not contain a statement saying if the dismissal is with or without prejudice.

The indictment in our present case was filed in the District of Wyoming on May 17, 1972. Three persons were named as defendants and violations of §§ 1341 and 371 were alleged. The indictments allege different § 1341 violations except Count IV (Wyoming) and Count VIII (Utah) allege the same facts. The Wyoming count charges three persons and the Utah count charges five

---

580

defendants. The conspiracy counts are similar; the Wyoming indictment alleges 15 overt acts and the Utah indictment alleges 25 overt acts. Eight overt acts are common to both conspiracy counts. On August 15, 1972, the United States Attorney for the District of Wyoming apparently was served with a temporary restraining order from the United States District Court for the District of Utah; the order sought to restrain prosecution of this case.[2]

Based on this factual record, appellant argues (1) the dismissal of the Utah indictment barred prosecution under the subsequent Wyoming indictment, at least with respect to the conspiracy count and (2) he was denied his Sixth Amendment speedy trial right due to the delay from the time of the indictment in Utah and conviction in Wyoming (21 months).

The Utah dismissal was pursuant to F.R.Crim.P. 48(b) which provides:

> By Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

A dismissal pursuant to this rule can be with or without prejudice; if without prejudice, the dismissal does not bar further prosecutions. 3 Wright, Federal Practice and Procedure § 814 (1969). Judge Ritter stated the ground of dismissal as "failure to diligently prosecute the action." This is not tantamount to a determination that appellant's right to a speedy trial was violated; Rule 48(b) implements that right but also restates the inherent power of a court to dismiss a case for "want of prosecution". *United*

States v. Davis, 487 F.2d 112 (5th Cir. 1973), cert. den'd, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *Mann v. United States*, 113 U.S.App.D.C. 27, 304 F.2d 394 (1962), cert. den'd, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). A dismissal resting on a non-constitutional ground such as "want of prosecution" or "calendar control" is normally without prejudice to a subsequent prosecution. Appellant, however, points to the temporary restraining order as indicative of an intention on Judge Ritter's part that the dismissal be "with prejudice". We choose not to give that order, not part of our record, controlling weight as to the interpretation of the dismissal. Rather, we believe the phrase "failure to diligently prosecute the action" and the absence of a specific indication that the dismissal is "with prejudice" indicate that the dismissal is "without prejudice". Thus, the Utah dismissal of the indictment did not bar the subsequent re-indictment in Wyoming on any or all of the counts.[3]

Appellant's speedy trial argument deserves little comment. The period of time involved herein does not begin with the original indictment in Utah. The Utah indictment was dismissed, apparently upon appellant's own motion. Trial commenced in Wyoming on August 7, 1972, 82 days after indictment in Wyoming. Appellant was arraigned on June 14, 1972, and trial was set for July 18, 1972. Appellant's counsel moved for a continuance; the trial was reset for August 7, 1972. In discussing a speedy trial argument, this Court recently said:

> The first factor—the amount of delay—is a "triggering mechanism" under the *Barker* [*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)] test. . . . Until there is some delay which is potentially preju-

---

**2.** The restraining order itself is not in the record on appeal. The transcript does contain a discussion concerning it.

**3.** We note that appellant was sentenced to four years on count I of the indictment and

four years on each of counts II through XI, to be served concurrently with the sentence imposed on count I. Although it is possibly applicable, we have not relied on the concurrent sentence doctrine.

dicial, there is no need for inquiry into the other factors.

*United States v. Latimer*, 511 F.2d 498 (10th Cir. 1975). We do not believe the minimal delay here of less than three months, some in response to appellant's own request, triggers an inquiry into the other *Barker* factors. This offense did involve a complex charge; a serious, complex charge justifies some toleration for delay. *United States v. Latimer, supra; United States v. Davis, supra.* The delay here was not sufficient to be a denial of appellant's speedy trial right.

Affirmed.