**UNITED STATES of America, Appellant,**

v.

**James Henry SIMMONS, Appellee.**

**No. 75–3251.**

United States Court of Appeals, Ninth Circuit.

May 24, 1976.

Robert H. Westinghouse, Asst. U. S. Atty., (argued), Seattle, Wash., for appellant.

Irvin H. Schwartz, Federal Public Defender, (argued), Seattle, Wash., for appellee.

## OPINION

Before BARNES, BROWNING and WRIGHT, Circuit Judges.

BARNES, Senior Circuit Judge:

In a two-count indictment, Simmons was charged with forging and uttering a United States Treasury check in violation of 18 U.S.C. § 495. The district judge dismissed the indictment with prejudice, holding that the government violated the defendant's Sixth Amendment right to a speedy trial. As a second rationale, the indictment was dismissed with prejudice under the authority of Rule 48(b) of the Federal Rules of Criminal Procedure.[1] The government ap-

---

1. Rule 48(b) of the Federal Rules of Criminal Procedure provides: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant

peals from this order of dismissal on the ground that the district judge abused his discretion.

Before reaching the merits of this appeal, we review the chronology of events. The offense for which Simmons was indicted occurred on March 5, 1973. Even though incriminating statements against Simmons were obtained by Secret Service agents by the end of August, 1973, the indictment was not returned until April 15, 1975. Trial was scheduled for August 11, 1975. On May 2, 1975, counsel for the defendant requested access to the original check and handwriting exemplars for the purpose of having them examined by a handwriting expert. On June 6, 1975, the United States Attorney agreed to furnish the original documents which were requested by defense counsel. In Mid-July, 1975, government counsel sought to obtain the originals of the documents from the Secret Service in Washington, D.C., but the examiner retained them in Washington for the purpose of preparing demonstrative exhibits for trial. On August 6, 1975, only five days before trial was scheduled, the United States Attorney advised defense counsel that the documents had finally arrived from Washington and were available for examination by defendant's expert at the offices of the Secret Service in Seattle. Due to the difficulty of conducting the examination on such short notice, defendant's expert was unable to arrange his schedule until August 14, 1975. On August 11, 1975, it was learned that the case would not be tried until August 13, 1975. Later on August 11, 1975, the defendant moved for a continuance of the trial for at least one week. Such motion was based on presenting defendant's expert the opportunity to conduct his examination. Following a hearing on

August 12, 1975, the district court dismissed the indictment with prejudice. Written findings of fact and conclusions of law and an order of dismissal were entered on August 20, 1975.

The issue presented on this appeal is whether the district court abused its discretion in dismissing the indictment with prejudice (1) under the Sixth Amendment right to a speedy trial, or (2) under Rule 48(b) of the Federal Rules of Criminal Procedure? Because we hold that the district court abused its discretion on both of the above grounds, we reverse its order dismissing the indictment with prejudice.

## I. The Sixth Amendment Right to a Speedy Trial

In *Klopfer v. North Carolina*,[2] the Supreme Court acknowledged that the right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment."[3] The standards by which this guarantee is to be judged were established by the Supreme Court in *Barker v. Wingo*.[4] The approach adopted by the Court was that of balancing the conduct of the prosecution and the defendant against one another on an *ad hoc* basis. Four factors must be examined in determining whether there has been a speedy trial violation: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[5] No one of these four factors is either a necessary or a sufficient condition to support a finding that there has been a deprivation of the constitutional right to a speedy trial. Rather, these factors are related and must be considered together. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."[6]

who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

**2.** 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

**3.** *Id.* at 223, 87 S.Ct. at 993; *see Smith v. Hooey*, 393 U.S. 374, 374–75, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

**4.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**5.** *Id.* at 530, 92 S.Ct. at 2192.

**6.** *Id.* at 533, 92 S.Ct. at 2193. For law review articles which discuss the balancing approach

■ Applying the test promulgated by the Supreme Court in *Barker*, we begin our analysis with the length of the delay in this case. The length of delay between the alleged commission of the offense and the return of the indictment here was approximately twenty-five months, while the delay between the indictment and the order of dismissal was slightly less than four months. While a minority of the Supreme Court and some commentators have proposed that the particular protections guaranteed by the Speedy Trial Clause should take effect at both the pre- and the post-indictment stage,[7] such is not the law at the present time. The Supreme Court made this fact manifestly clear in *United States*

*v. Marion*,[8] where Mr. Justice White, writing for the Court, held: "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." [9]

■ In his order of dismissal, the district judge observed that if he had granted a continuance, rather than dismissing with prejudice, such continuance probably would have been from six to eight weeks.[10] Hence, delay in this case between indictment and trial would have been approximately six months. As both the Supreme Court and this Court have recognized,

adopted by the Supreme Court, *see e. g.*, Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stanford Law Review 525, 539–41 (1975); Godbold, *Speedy Trial—Major Surgery for a National Ill*, 24 Alabama Law Review 265, 274–88 (1972); Steinberg, *Right to Speedy Trial: The Constitutional Right and its Applicability to the Speedy Trial Act of 1974*, 66 Journal of Criminal Law & Criminology 229, 230–32 (1975); Comment, *Devitalization of the Right to Speedy Trial*, 5 St. Mary's Law Journal 106, 111–14 (1973); Comment, *Right to Speedy Trial: Maintaining a Proper Balance Between the Interests of Society and the Rights of the Accused*, 4 U.C.L.A.–Alaska Law Review 242, 243–46 (1974).

7. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), where Mr. Justice Douglas, joined by Mr. Justice Brennan and Mr. Justice Marshall, stated:
"The duty which the Sixth Amendment places on Government officials to proceed expeditiously with criminal prosecutions would have little meaning if those officials could determine when that duty was to commence. To be sure, '[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.' *Beavers v. Haubert*, 198 U.S. 77, 87, [25 S.Ct. 573, 576, 49 L.Ed. 950] (1905). But it is precisely because this right is relative that we should draw the line so as not to condone illegitimate delays whether at the *pre*- or the *post*-indictment stage."
*Id.* at 331–32, 92 S.Ct. at 469. (Douglas, J., concurring in result) (emphasis in original).
For law review articles proposing that the speedy trial right should apply to pre-indictment delays, *see, e. g.*, Steinberg, *supra*, note 6, at 236–39; Note, *Pre-Arrest Delay: Evolving Due-Process Standards*, 43 New York University Law Review 722, 725–26 (1968); Note, *The Right to Speedy Trial*, 20 Stanford Law Review

476, 488–93 (1968); Note, *Justice Overdue—Speedy Trial for the Potential Defendant*, 5 Stanford Law Review 95, 100–02 (1952); Note, *Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions*, 77 Yale Law Journal 767, 780–83 (1968); Comment, 4 U.C.L.A.–Alaska Law Review, *supra*, note 6, at 254–59.

8. 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

9. *Id.* at 320, 92 S.Ct. at 463. Although the speedy trial right is applicable only in the post-indictment stage, Mr. Justice White emphasized that the defendant is not without a remedy in case of prosecutorial misconduct in the pre-indictment stage. Such relief is to be afforded by the Due Process Clause of the Fifth Amendment:
"[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."
*Id.* at 324, 92 S.Ct at 465.
In the case at bar, Simmons alleges no due process violation. Deliberate governmental misconduct is not an issue in this case. For holdings in this Circuit where a due process issue was raised in regard to a pre-indictment delay, *see e. g.*, *United States v. Manning*, 509 F.2d 1230, 1234 (9th Cir.1974); *United States v. Erickson*, 472 F.2d 505, 507–08 (9th Cir.1973); *United States v. Griffin*, 464 F.2d 1352, 1354–55 (9th Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 447, 34 L.Ed.2d 302 (1972).

10. Clerk's Transcript at 119. If the district court had granted a continuance here, such continuance would have been due to the government's negligence. *See* note 49, *infra*.

"[t]he length of the delay is to some extent a triggering mechanism."[11] Unless there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors of the balancing process. The length of delay that will necessitate such an inquiry is dependent upon the facts of each case.[12] Although a borderline case, we hold that the six-month delay here was sufficiently prejudicial to trigger an inquiry into the other factors. We reach this conclusion because "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."[13]

We next turn to the reason for the delay. Upon reviewing the record, we conclude that the government's culpability was negligence and not deliberate. Although weighted less heavily than deliberate delays, negligent conduct "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the Government rather than with the defendant."[14]

Concerning the defendant's assertion of his right to a speedy trial, we note that there was no such formal demand here prior to the dismissal. Although this right cannot be presumptively waived, the neglect of asserting it is a relevant factor to be considered in determining whether there has been a speedy trial violation. The Supreme Court has held that the defendant's assertion of this right is entitled to strong evidentiary weight and that his failure to demand a speedy trial will make it difficult for him to prove that there was an abridgement of this guarantee.[15]

The last factor to be considered is prejudice to the defendant. The Supreme Court has identified three interests of the defendant which the Speedy Trial Clause is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[16] Of these three interests, only the second one is of concern here. In dismissing the indictment with prejudice, the district court stated: "Any further delay would unnecessarily continue the restraints upon Simmons' liberty and the emotional strain to which he has been subjected."[17]

Conclusory allegations of general anxiety and depression are present in almost every criminal prosecution. We find nothing in

11. *Barker v. Wingo, supra*, 407 U.S. at 530, 92 S.Ct. at 2192; *see United States v. Geelan*, 520 F.2d 585, 587 (9th Cir.1975).

12. 407 U.S. at 530–31, 92 S.Ct. at 2182; 520 F.2d at 587.

13. 407 U.S. at 531, 92 S.Ct. at 2182. Thus, if this Court were confronted with a speedy trial constitutional issue where the charge involved a serious, complex conspiracy, we would have a different question than the one presently before us.

14. *Id; see Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir.1975). In *Strunk* the Supreme Court held that in light of the policies underlying the Speedy Trial Clause, dismissal of the charges is the only possible remedy for a deprivation of this constitutional right. 412 U.S. at 439–40, 93 S.Ct. at 2260.

15. 407 U.S. at 525, 528, 531–32, 92 S.Ct. at 2182, *see United States v. Geelan, supra,* 520 F.2d at 587–88. We note that appellee requested dismissal, based on pre-indictment delay on

due process grounds which motion was denied by the district judge. Nowhere in that motion nor in any other portion of the record, was there a demand for a speedy trial.

16. 407 U.S. at 532; 92 S.Ct. at 2193; *see United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *United States v. Dreyer*, 533 F.2d 112, 116 (3rd Cir.1976); *United States v. Brown*, 172 U.S.App.D.C. 92, 520 F.2d 1106, 1110–13 (1975); *United States v. Roberts*, 515 F.2d 642, 645 (2nd Cir.1975); *United States v. Jackson*, 508 F.2d 1001, 1004 (7th Cir.1975).

17. Clerk's Transcript at 119; *see Strunk v. United States, supra,* 412 U.S. at 439, 93 S.Ct. at 2263, where the Court asserted:

"The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes."

the record which distinguishes the emotional strain experienced by Simmons from other criminal defendants. Further, during this period, Simmons was at liberty on his personal recognizance. We therefore conclude that such allegations, as are present here, constitute a showing of minimal prejudice of a type normally attending criminal prosecution. This showing, without more, did not deprive Simmons of his right to a speedy trial.[18]

■ Upon considering the above factors of the balancing process, we reach the following conclusions. First, the length of delay between the indictment and the time trial would have been held had a continuance been granted was relatively short. This finding is particularly true in view of the fact that in *Barker* the Supreme Court did not hold that there was a speedy trial violation even though the length of delay was well over five years.[19] Second, the reason for the delay was, in part, due to the government's negligence. This deficiency is, however, outweighed by two counterbalancing factors. These factors are (1) that the defendant did not assert his right to a speedy trial, and (2) most importantly, the absence of serious prejudice caused by the delay. Taking into account these counterbalancing factors plus the fact that the delay in this case was relatively short, we

hold that the district court abused its discretion in finding that the defendant had been denied his constitutional right to a speedy trial.

## II. Dismissal with Prejudice under Rule 48(b) of the Federal Rules of Criminal Procedure

■ As a second rationale for dismissing the indictment with prejudice, the district court relied upon Rule 48(b) of the Federal Rules of Criminal Procedure. In pertinent part, that Rule provides: "[I]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." As the government acknowledges, this Rule grants the trial court inherent power, derived from common law, to dismiss a case for want of prosecution, whether or not there has been a Sixth Amendment violation.[20] Thus, this power of dismissal is independent of constitutional considerations, and is derived from the court's supervisory authority in regard to its own jurisdiction.[21]

The government contends, however, that unless there has been a Sixth Amendment violation, dismissal under Rule 48(b) must be without prejudice. As authority for this proposition, the government directs our attention to two earlier decisions of this Circuit, *United States v. Apex Distributing*

---

**18.** *See Barker v. Wingo, supra,* 407 U.S. at 532, 534, 92 S.Ct. at 2182; *United States v. Annerino,* 495 F.2d 1159, 1163–64 (7th Cir.1974); *United States v. DeTienne,* 468 F.2d 151, 157–58 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973).

**19.** *See* 407 U.S. at 533–34, 92 S.Ct. at 2182. We do not mean to imply that there must be a delay over a period of years before a constitutional violation is found. For instance, in *United States v. Butler,* 426 F.2d 1275 (1st Cir. 1970), *cert. denied,* 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971), cited by the Supreme Court in *Barker* at 531 n. 31, 92 S.Ct. 2182 n. 31, the First Circuit held that a delay under the circumstances of that case of nine months, absent a legitimate reason for such delay, constituted a deprivation of the constitutional right to a speedy trial. In so holding, the Court stated:
"We are deeply disturbed by the government's conduct here. While there is little doubt that

the right to a speedy trial 'is consistent with delays and depends upon circumstances,' the delays must serve some legitimate purpose. Here the government has no excuse for its conduct. In this case, where the result turned on eyewitness identifications which necessarily became less reliable with the passage of time, we think a delay of nine months is overly long absent a legitimate reason therefor."
426 F.2d at 1277.

**20.** *United States v. Stoker,* 522 F.2d 576, 580 (10th Cir.1975); *Mann v. United States,* 113 U.S.App.D.C. 27, 304 F.2d 394, 398, *cert. denied,* 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). As the Committee Note recognizes, Rule 48(b) "is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Note of Advisory Committee, *following,* 18 U.S.C.A. Rule 48.

**21.** *United States v. Furey,* 514 F.2d 1098, 1113 (2nd Cir.1975).

*Company*,[22] and *Cohen v. United States*.[23] We disagree with such reliance. Our holding in *Cohen* never confronted the issue whether dismissal with prejudice, when there has been no constitutional deprivation, is permissible. Rather, that holding dealt with whether dismissal for non-prosecution could be without prejudice.[24] The *Apex* decision presents a more difficult question. It appears to reject dismissal with prejudice except where such dismissal is on the merits.[25] Counterbalancing *Apex* is our most recent pronouncement on this issue in *United States v. Richter*.[26] In *Richter*, Judge Wallace, writing for the Court, held that dismissal with prejudice for failure to comply with a discovery order was unwarranted under the "unique facts of [that] case."[27] The opinion strongly implies, however, that under a different set of circumstances, dismissal with prejudice would have been warranted.

In determining whether dismissal under Rule 48(b) may be with prejudice, even though there has been no constitutional violation, we find recent decisions in the Second and Tenth Circuits to be particularly relevant. In *United States v. Furey*,[28] decided last year, the Second Circuit reaffirmed its earlier holding in *Hilbert v. Dooling*,[29] that "it is within the court's inherent power to dismiss a prosecution with prejudice for prosecutorial delay not rising to constitutional dimensions . . . .."[30] In *Furey*, the government cited our decisions in *Cohen* and *Apex* to support its contention that a dismissal with prejudice is proper only when there has been a Sixth Amendment abridgement. Specifically referring to our holdings, the Second Circuit replied: "Cases cited by the government for the proposition that dismissal with prejudice is proper only when the Sixth Amendment is invoked are not only distinguishable but *do not support such a rule*."[31] Similarly, in a decision rendered a year ago, the Tenth Circuit in *United States v. Stoker*[32] said that a dismissal under Rule 48(b) may be with prejudice even though there has been no constitutional violation. The Court held:

"A dismissal pursuant to this rule can be with or without prejudice . . . .. A dismissal resting on a non-constitutional ground such as 'want of prosecution' or 'calendar control' is *normally* without prejudice to a subsequent prosecution."[33]

Hence, although dismissal not arising from a constitutional violation is normally without prejudice, the facts and circumstances of a particular case may very well justify dismissal with prejudice.

■ Based upon our decision in *United States v. Richter* and the decisions rendered by other circuit courts discussed *supra*, we hold that under Rule 48(b) it is within the

---

**22.** 270 F.2d 747 (9th Cir.1959).

**23.** 366 F.2d 363 (9th Cir.1966), *cert. denied*, 385 U.S. 1035, 87 S.Ct. 771, 17 L.Ed.2d 682 (1967).

**24.** *Id.* at 365–67. The Second Circuit in *Furey*, *supra*, 514 F.2d at 1103, agrees with this interpretation of our *Cohen* decision.

**25.** *See* 270 F.2d at 750. In *Hilbert v. Dooling*, 476 F.2d 355 (2nd Cir.) (*en banc*), *cert. denied*, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973), the Second Circuit distinguished *Apex* by concluding that "the court [in *Apex*] had no occasion to consider the effect of detailed rules of the type here under consideration, which give the government fair and reasonable notice of the consequences of its non-readiness." *Id.* at 361. Similarly here, we construe the provisions of the Western District of Washington Plan for the Prompt Disposition of Criminal Cases. *See* notes 46–50 and accompanying text *infra*.

**26.** 488 F.2d 170 (9th Cir.1973).

**27.** *Id.* at 175.

**28.** 514 F.2d 1098 (2nd Cir.1975).

**29.** 476 F.2d 355 (2nd Cir.) (*en banc*), *cert. denied*, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973).

**30.** 514 F.2d at 1104; *see* 476 F.2d at 358–61.

**31.** 514 F.2d at 1103–04 (emphasis added); *see* 476 F.2d at 361.

**32.** 522 F.2d 576 (10th Cir.1975).

**33.** *Id.* at 580. In so holding, the Tenth Circuit emphasized that "Rule 48(b) implements [the Sixth Amendment right to a speedy trial] but also restates the inherent power of a court to dismiss a case for 'want of prosecution'." *Id.*

court's inherent power to dismiss a case with prejudice for want of prosecution, whether or not there has been a Sixth Amendment violation.

■ The government argues, however, that even if such a dismissal with prejudice is authorized by Rule 48(b), such power should be utilized with caution and only after a forewarning of the consequences. Upon examining the relevant authorities, we agree with the government.

In reaching the above conclusion, the Seventh Circuit's decision in *United States v. Clay* [34] is particularly helpful. In *Clay,* Mr. Justice Stevens, then a circuit judge, stated:

"The order [of dismissal] rested on the court's holding that a period of approximately eight months of unnecessary preindictment delay required dismissal. We have no doubt that a district court has the power to promulgate a rule which would lead to the dismissal of indictments returned after such a period of unnecessary or unexplained delay. However, *such a rule should be applied uniformly within the district and enforced only after the United States Attorney is aware that such a consequence will automatically follow a delay of that magnitude.*" [35]

Even more on point than *Clay* is the Second Circuit's holding in *United States v. Furey.* [36] As discussed previously, the *Furey* court held that the court has the authority to dismiss the case with prejudice under Rule 48(b) for prosecutorial delay, notwithstanding the fact that there has been no constitutional violation. In so holding, the Court was interpreting the validity of the dismissal-with-prejudice sanction (Rule 4) of the Eastern District of New York Plan for the Prompt Disposition of Criminal Cases promulgated pursuant to Rule 50(b) of the Federal Rules of Criminal Procedure. [37] Rule 4 of the District Court Plan requires the government to "be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried . . . whichever is earliest." If the government does not meet this deadline and if the offenses charged are non-capital, the defendant may move for dismissal of the indictment. Unless there exist sufficient grounds for tolling any portion of the six-months period, "the court *shall* enter an order dismissing the indictment *with prejudice* unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days." [38]

---

**34.** 481 F.2d 133 (7th Cir.), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973).

**35.** *Id.* at 138 (emphasis added).

**36.** 514 F.2d 1098 (2nd Cir.1975).

**37.** In relevant part, Rule 50(b) provides:
"*Plan for Achieving Prompt Disposition of Criminal Cases.*
"To minimize undue delay and to further the prompt disposition of criminal cases, each district court shall conduct a continuing study of the administration of criminal justice in the district court and before United States magistrates of the district and shall prepare a plan for the prompt disposition of criminal cases which shall include rules relating to time limits within which procedures prior to trial, the trial itself, and sentencing must take place, means of reporting the status of cases, and such other matters as are necessary or proper to minimize delay and facilitate the prompt disposition of such cases. . . ."

**38.** *See United States v. Furey, supra,* 514 F.2d at 1100–01, and *Hilbert v. Dooling, supra,* 476 F.2d at 357–62, for a more complete discussion of the Eastern District of New York Plan. "The purpose of Rule 4 is to insure that regardless whether a defendant has been prejudiced in a given case or his constitutional rights have been infringed, the trial of the charge against him will go forward promptly . . . ." 476 F.2d at 357–58. In full, Rule 4 provides:
"*All Cases: Trial Readiness and Effect of Non-Compliance.*
In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion

Thus, the above rule specifically provides for dismissal with prejudice if the government does not adhere to the imposed time limits. As such, the rule clearly forewarns the United States Attorney that he must comply with its requirements or face the consequence that the indictment will be dismissed with prejudice.

Although the time limits imposed by the Speedy Trial Act of 1974 [39] were not applicable to this proceeding, we believe that the Act is relevant to show that dismissal with prejudice not arising from a constitutional violation should be exercised with caution and only after a forewarning of the consequences. Upon examining the Act, we note that it provides for a definitive time limit within which the accused must be brought

to trial.[40] To enable the federal courts to fully adhere to these time limits, the Act takes effect over a gradual period.[41] In addition, none of the time limits provided for by the Act will take effect until "on or after the date of expiration of the twelve-calendar-month period following July 1, 1975."[42] Congress, however, provided an interim plan which commenced ninety days following July 1, 1975, and which terminates on the date immediately before the expiration of the above twelve-calendar-month period.[43] This interim plan relates only to those defendants who are incarcerated solely because they cannot pay bail and to released persons who are awaiting trial and have been designated as being of high risk.[44]

shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5 [Rule 5 tolls the six-month period in various circumstances], the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

**39.** 18 U.S.C. § 3161 et seq. As stated in the legislative history, the Act's purpose "is to assist in reducing crime and the danger of recidivism by requiring speedy trials and by strengthening the supervision over persons released pending trial." 1974 U.S.Code Cong. & Admin.News p. 7402.

**40.** 18 U.S.C. § 3161(b), (c). The Act provides that the indictment or information must be filed within thirty days from the date of arrest. The arraignment must then be conducted within ten days from the time of the indictment or information. Thereafter, where a plea of not guilty is entered, the trial must then be held within sixty days after arraignment. Thus, from the date of his arrest, the accused must be brought to trial within 100 days.

**41.** 18 U.S.C. § 3161(f), (g). For the first twelve-calendar-month period following the effective date of this section (§ 3161), the maximum time limit between arrest and indictment is sixty days, for the second such twelve-month period forty-five days, and for the third such period thirty-five days. The maximum time period between arraignment and trial is 180 days for the first such period, 120 days for the

second, and eighty days for the third such period. See also § 3174.

**42.** 18 U.S.C. § 3163(a), (b).

**43.** 18 U.S.C. § 3164(a).

**44.** 18 U.S.C. § 3164. The trial of any defendant so incarcerated or released and designated as being of high risk, must begin no later than ninety days following the beginning of such continuous detention or designation of high risk. The consequence of not bringing a detainee, through no fault of the accused or his attorney, to trial within the ninety-day period was recently dealt with by this Circuit in United States v. Tirasso, 532 F.2d 1298 (9th Cir. 1976). In Tirasso, the Court stated:

"[Defendants] point out that the statute unconditionally mandates release from custody in all cases where the defendants have not been brought to trial within ninety days of arrest. 18 U.S.C. § 3164(c).

"We are constrained to agree. The language of section 3164 is straightforward. We find no ambiguity in its interpretation. Subsection (b) provides that the trial of persons held in custody solely because they are awaiting trial must commence within ninety days following the beginning of such continuous detention. Subsection (c) provides that the failure to commence trial within the ninety-day period, where such failure is not occasioned by the fault of the accused or his counsel, must result in an automatic review by the court of the conditions of release, and further that 'no detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period . . . .' Under the clear language of the statute the reason for delay is irrelevant, so long as it is not occasioned by the accused or his counsel.

Most important to our inquiry here, the Act specifically provides that if the defendant is not brought to trial within the required time limit, excluding periods permitted by justifiable delays, "the information or indictment *shall* be dismissed on motion of the defendant."[45] The Act then states: "In determining whether to dismiss the case *with or without prejudice*, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."[46]

Thus, the Speedy Trial Act clearly provides that a dismissal with prejudice may occur even though there has been no constitutional violation. But in so providing, the Act requires that courts exercise caution in utilizing this procedure. Such caution is manifested by the consideration of various factors enumerated by the Act, plus other relevant factors which courts may independently employ in reaching the ultimate decision. More importantly, the Act clearly forewarns the United States Attorney that he must comply with the applicable time limits or face the possibility that the indict-ment or information will be dismissed with prejudice.

Upon considering the pertinent case law and the provisions of the Speedy Trial Act, we hold that even though it is within the court's inherent power under Rule 48(b) to dismiss a case with prejudice for want of prosecution, not arising from a Sixth Amendment violation, such power should be utilized with caution, and only after a forewarning to prosecutors of the consequences.

We now apply the above principle to the facts of the case presently before us. The defendant-appellee Simmons directs our attention to the Western District of Washington Plan for the Prompt Disposition of Criminal Cases promulgated pursuant to Rule 50(b) of the Federal Rules of Criminal Procedure.[47] He argues that this Plan fulfills the two necessary requirements: (1) dismissal with prejudice where there has been no constitutional violation should be exercised with caution, and (2) such authority should be utilized only after the United States Attorney is forewarned of the consequences.

We next turn to the pertinent provisions of the Plan. Section 2(b) provides: "The trial shall commence . . . within 120

* * * * * *

"We are fully aware of the dangers inherent in today's decision. The charges against these defendants are serious. We are not dealing with a haphazard attempt by amateurs to run the border with a small quantity of controlled substance, but rather with a sophisticated enterprise for importing wholesale quantities of dangerous drugs into the United States. . . .
"Release of these two foreign nationals from custody is tantamount to an invitation to flee across the Mexican border, less than 3 hours away. . . .
"In light of these facts, the wisdom of the result Congress has decreed is questionable. We release a man alleged to be the head of a foreign criminal organization dedicated to the smuggling of large quantities of illegal drugs, so that he may quickly cross the border and resume operating his business. We are also releasing his alleged right-hand man, as if to make certain that the enterprise continues to operate at top efficiency. But this result is the only one open to us under the plain terms of the statute.

"It is discouraging that our highly refined and complex system of criminal justice is suddenly faced with implementing a statute that is so inartfully drawn as this one. But this is the law, and we are bound to give it effect."
*Id.* at 1299 – 1300.

**45.** 18 U.S.C. § 3162(a)(2) (emphasis added). The sanctions imposed by this section refer only to the time periods imposed by § 3161, and not to the time limits promulgated pursuant to the interim plan, § 3164.

**46.** 18 U.S.C. § 3162(a)(2) (emphasis added). For law review articles which discuss the Speedy Trial Act in greater detail, *see* Steinberg, *Right to Speedy Trial: The Constitutional Right and its Applicability to the Speedy Trial Act of 1974*, 66 Journal of Criminal Law & Criminology 229 (1975); Note, *The Speedy Trial Act of 1974: Defining the Sixth Amendment Right*, 25 Catholic University Law Review 130 (1975).

**47.** *See* note 37 *supra*, for the relevant text of Rule 50(b).

days if [the defendant] is not in custody." The effect of noncompliance with this time limit is stated in Section 4 of the Plan: "Subject to the power of the Court to dismiss a case for unnecessary delay, the failure to conform with the time limits herein prescribed shall not require the dismissal of the prosecution." [48]

As we have previously indicated, the district judge in this case observed that if he had decided to grant a continuance, rather than to dismiss with prejudice, such continuance probably would have lasted from six to eight weeks. Taking this factor into consideration, the delay here between indictment and trial would have been slightly less than six months. It is therefore clear that the 120-day requirement of Section 2(b) of the Plan has been violated.[49]

Our inquiry, however, must ask two additional questions: (1) was caution utilized by the district court in dismissing the case with prejudice, and (2) was the United States Attorney forewarned of this consequence of noncompliance (i. e., dismissal with prejudice)?

█ In regard to the first consideration, we note that the Plan, on its face, does not make reference to the use of "caution" by the district court. This omission, however, is not fatal. If the district judge, in his sound discretion, considers this factor in his decision, we believe that this requirement has been satisfied.[50]

It is unnecessary, however, for us to determine whether the requisite "caution" was exercised by the district court in this case. We will assume it was. Our conclusion is that the Plan fails to satisfy the second requirement, namely, that the United States Attorney was not forewarned that dismissal with prejudice might result as a consequence of noncompliance. Unlike the Eastern District of New York Plan and the Speedy Trial Act, the Western District of Washington Plan does not state that dismissal may, or must be, with prejudice. Upon careful examination, the Washington Plan does not even imply that dismissal may be with prejudice. Rather, if any conclusion is to be drawn from the language of the Plan,[51] that conclusion is that failure by the government to comply with the pertinent time requirement may result in dismissal *without* prejudice. We utilize the word "may" here, for even if the time requirement is violated, the district judge still has discretion under the Plan not to dismiss the prosecution. Thus, there is no language in the Plan which forewarns the United States Attorney that a possible consequence of noncompliance with the applicable time limits is dismissal with prejudice.

█ Based upon the foregoing, we must therefore conclude that the district court

48. The Western District of Washington has recently amended its Plan. This amended Plan, which became effective on September 29, 1975, does not apply to the case at bar.

49. Section 3 of the Plan provides that the 120-day time limit prescribed by Section 2(b) may be extended by the Court for periods of delay resulting from continuances granted by the Court for persuasive reasons, on application of the accused or the prosecution. If the district court had granted a continuance here, such continuance would have been due to the government's negligence rather than due to the "exceptional circumstances" of the case. Section 3(g). Because of the government's failure to exercise adequate diligence, the district court was correct in not extending the 120-day time period prescribed by Section 2(b).

50. We do not mean to imply that Plans, such as that of the Eastern District of New York, which provide on their face, that the indictment must

be dismissed with prejudice, if the government does not adhere to the mandatory time requirements, are invalid. The necessary "cautionary" requirement may very well be fulfilled in the careful consideration and evaluation of the proposed Plan by the various judges involved. By adopting and approving such a Plan, it is certainly arguable that the requisite "caution" has been exercised. Hence, by utilizing such caution and by forewarning the United States Attorney that the consequence of noncompliance is dismissal with prejudice, such Plans could be upheld.

51. In relevant part, Section 4 of the Plan provides:

"Subject to the power of the Court to dismiss a case for unnecessary delay, the failure to conform with the time limits herein prescribed shall not require the dismissal of the prosecution."

838

abused its discretion in dismissing the indictment with prejudice under Rule 48(b) of the Federal Rules of Criminal Procedure.

### III. *Conclusion*

We hold that the district court abused its discretion in dismissing the indictment with prejudice (1) under the Sixth Amendment right to a speedy trial and (2) under Rule 48(b) of the Federal Rules of Criminal Procedure. Accordingly we reverse the district court's order dismissing the indictment with prejudice, and remand for further proceedings below.