# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED:DECEMBER 17, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000226-MR

MARK MONTEZ BARNETT — APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.          HONORABLE KELLY M. EASTON, JUDGE
NO. 13-CR-00358

COMMONWEALTH OF KENTUCKY — APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The Appellant, Mark Montez Barnett, was convicted of robbery. He now raises two claims of error: (1) that his right to a speedy trial was violated by a 183-day delay between his invocation of the right at his arraignment and the start of his trial; and (2) that the trial court erred in allowing a police detective to testify about Barnett's other bad acts. We conclude that neither claim of error requires reversal, and therefore affirm.

### I. Background

On July 3, 2012, Ashley Huckleby was working alone at a Cash Express check-cashing store in Elizabethtown, Kentucky. At the end of the day, she closed up the store and put the day's cash receipts of approximately $3,600 in a bank bag, which she put in her purse, for later deposit. As she left the store, two men confronted her, forced her into a vehicle temporarily, and took her purse.

The men turned out to be Kenneth Wright and his cousin, Mark Barnett. Wright's girlfriend, Althea Haycraft had worked at the Cash Express in the past. She knew that the store owners frequently required their workers to transport large amounts of cash to the bank with lax security procedures, and she had told Wright and Barnett this information.

That day, Haycraft had given Wright and Barnett a ride to an apartment complex near the Cash Express. They did not tell her what they planned to do but instead told her to wait for them there. A short time later, they returned carrying a woman's purse. In the purse was a bank bag, which Haycraft recognized as the kind used by Cash Express. When she asked the men about it, she was told: "Just drive and keep your mouth shut, and you and your son will be fine." Fearing reprisal, she did not go to the police to report the crime.

A year later, Haycraft was called to the police station, where she was accused of having participated in the robbery of Ashley Huckleby. She eventually identified Wright and Barnett as the robbers. She disclaimed having known anything about their plan to rob the Cash Express, but she admitted having had numerous conversations with them about the store's lax security.

Wright and Barnett were charged with complicity to second-degree robbery. Barnett was also charged with being a first-degree persistent felony offender (PFO), which was later amended to second-degree.

Both men were tried jointly and convicted of all offenses. Barnett was sentenced to a PFO-enhanced 20 years in prison.

Barnett appeals as a matter of right to this Court. Ky. Const. § 110(2)(b). Additional facts will be laid out below as necessary.

2

## II. Analysis

### A. Barnett's right to a speedy trial was not violated.

Barnett first claims that his right to a speedy trial was violated. He first invoked this right at his arraignment, stating orally that he wanted "a fast and speedy trial." The judge suggested that he could be tried as soon as the next day, but no attorney could be ready that soon. Instead, 183 days passed before Barnett's trial began. On appeal, Barnett cites both KRS 500.110, Kentucky's implementation of the Interstate Agreement on Detainers, and the Kentucky and federal constitutional guarantees of a speedy trial.

KRS 500.110 requires a defendant's case to be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint." KRS 500.110. But the statute only applies when the defendant "has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in any jurisdiction of this state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner." *Id.*

This statute had no application to Barnett for two reasons. First, it applies only when *written* notice has been served on the court and prosecution. Barnett did not file a written notice until February 7, 2013, only five days before his trial began.

3

Second, and more importantly, the statute applies only to a person serving a sentence of imprisonment under a judgment of conviction. "It does not apply where ... a defendant is seeking a speedy trial of an offense for which he is being held in pre-trial incarceration." *Gabow v. Commonwealth*, 34 S.W.3d 63, 69 (Ky. 2000), *overruling on other grounds recognized in Stacy v. Commonwealth*, 396 S.W.3d 787, 794 (Ky. 2013). There is no evidence, much less an assertion, that Barnett was serving a sentence of imprisonment at the time he asserted his speedy trial rights, or at any time leading up to his trial. He instead appears to have been held in a local jail because he could not make bond to secure his pre-trial release from incarceration.

Instead, Barnett's oral "speedy trial demand is treated as an assertion of the right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution and Section 11 of the Constitution of Kentucky." *Gabow*, 34 S.W.3d at 69. Such claims are evaluated under a balancing test with four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also McDonald v. Commonwealth*, 569 S.W.2d 134, 136 (Ky. 1978) (applying the *Barker* test).

The first inquiry is whether the length of the delay was presumptively prejudicial. Absent a presumptively prejudicial delay, the remaining factors do not have to be examined, and the inquiry ends. *See Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("'[P]resumptive prejudice' does not

4

necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.").

The delay between Barnett's first assertion of his right and the beginning of his trial—183 days—was not long. It barely exceeds the length of time laid out in the Interstate Agreement on Detainers. In fact, the U.S. Supreme Court has noted specifically that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652 n.1. Barnett's delay falls far short of that. But whether a given delay is presumptively prejudicial "[d]epend[s] on the nature of the charges." *Id.* "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

Though there may be others, this Court has found only one case in which a six-month delay was found to be presumptively prejudicial: *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976). The crime in question was a fairly simple one, forging checks. The Ninth Circuit admitted that it was "a borderline case," but nonetheless concluded that the delay "was sufficiently prejudicial to trigger an inquiry into the other [*Barker*] factors," *id.*, primarily because of the simplicity of the crime.

Barnett's crime was also a fairly simple one, what some courts have described as a "'mundane garden-variety' robbery." *Cain v. Smith*, 686 F.2d 374, 381 (6th Cir. 1982). This places it on the less complex end of the spectrum of crime, which justifies only shorter delays. Nevertheless, this Court

5

cannot agree that a 183 day delay, even for a simple robbery, is presumptively prejudicial. This Court has repeatedly balked at finding presumptive prejudice in cases with even longer delays. *See, e.g., Gerlaugh v. Commonwealth*, 156 S.W.3d 747, 750 (Ky. 2005) (nine-month delay not presumptively prejudicial in robbery case); *Brown v. Commonwealth*, 934 S.W.2d 242, 248–49 (Ky. 1996) (eleven-month delay not presumptively prejudicial in double assault case). We see no reason to deviate from these holdings.

We conclude that Barnett's delay was not sufficiently long to demonstrate the type of presumptive prejudice requiring analysis of the other *Barker* factors, even in light of the crime with which he was charged. Barnett, therefore, was not deprived of his due-process right to a speedy trial under either the federal or Kentucky constitutions.

## B. Detective Bowling's testimony was not palpable error.

The Commonwealth called Detective Billy Bowling of the Elizabethtown Police Department at trial. Detective Bowling had been involved with the robbery investigation. As part of his direct examination, the prosecutor asked about the investigative process, particularly focusing on how the investigation was not initially successful. Specifically, he asked the detective about various leads in the case, including eye-witness testimony and video-surveillance footage, which were largely fruitless. The prosecutor then asked the detective if

6

he had "any other leads on a possible suspect." The detective said that he did, and at that point one of the defense counsel objected.[1]

At the ensuing bench conference, Wright's defense counsel asked inaudibly about something, and the prosecutor then discussed a set of composite photos related to another robbery in Radcliffe, Kentucky. Wright's counsel objected to the photos, and the prosecutor stated he had no intention of introducing them. He then stated that he wanted to show how the police had little evidence—e.g., no fingerprints—at first and what the investigative steps were. Wright's counsel said he was "not opposed to the investigative steps," but was concerned about "composite pictures from other things." The discussion with the judge that followed focused solely on the composite pictures, with the judge noting they were "not going that far down this path," with which the prosecutor agreed.

Returning to his direct examination, the prosecutor again asked the detective if he received any other leads. First, the detective noted that he received a tip that the Hodgenville Police Department had Barnett in custody and that there "were some charges, gun charges." Defense counsel did not object, but the prosecutor quickly stated that he could not go into the other charges. The detective then noted that he had a chance to talk to Barnett at that time, and that Barnett denied having anything to do with the robbery. The prosecutor then asked the detective about Marques Bates, who was later established to be Barnett's brother. The detective stated that Bates was

---

[1] The video record was locked on the witness stand at the time, and thus it is not entirely clear who objected. But it was Wright's counsel, not Barnett's, who began speaking at the ensuing bench conference.

7

arrested in August, and that he also denied any involvement in the robbery. The prosecutor then asked, "What led you to suspect Marques Bates?" The detective replied, "Information that the Hodgenville Police Department called about them casing another check-cashing place on that 24th of July." There was again no objection to this testimony.

Barnett now complains that the detective's testimony violated the proscription on evidence of other bad acts under KRE 404(b). He notes that the Commonwealth did not serve notice as required by KRE 404(c).

The first question is whether this claim of error is even preserved for our review. Barnett claims that the claim was preserved when unnamed "defense counsel objected" to the "leads" question, "likely intuiting what evidence would be heard in response to the question." But the obvious concern expressed at that time was over a set of composite pictures from another case. If defense counsel had "intuited" anything from the question, it was not the answers that the detective would ultimately give. The discussion at the bench conference at most raised an objection to the composite pictures, which were not admitted into evidence and which are not the basis of this claim of error.

The claim now raised was simply not preserved for our review. The objection to the question was insufficient because it was concerned with different evidence, which was never admitted. And neither defense counsel objected to the detective's answers at the time, despite have ample opportunity to do so.

But an unpreserved evidentiary error may be noticed on appeal if it rises to the level of palpable error. KRE 103(e); RCr 10.26. The test for palpable error

8

focuses on whether there has been a "manifest injustice." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* This has also been described as an error that is "shocking or jurisprudentially intolerable." *Id.* at 4.

The prosecution's case depended heavily on the testimony of Althea Haycraft, who did not come forward as a witness until almost a year after the robbery. Her testimony strongly implicated Barnett and Wright as the robbers, placing them in the vicinity of the robbery on the day of its commission and showing them in possession of the proceeds of the crime. The detective's testimony did nothing to undercut her testimony. More importantly, his testimony that Barnett had other charges and was believed to have been casing another robbery do not rise to manifest injustice, even if error. There is no probability of a different result absent this testimony, and the testimony did not threaten Barnett's entitlement to due process. Thus, even if the detective's statements were error, they do not require reversal.

### III. Conclusion

Barnett's speedy trial rights, both statutory and constitutional, were not violated by the 183-day delay between his demand for a speedy trial and the actual start of his trial. And the detective's fleeting testimony about Barnett's other charges and "casing" of another robbery does not rise to the level of palpable error. Because there was no reversible error, the Hardin Circuit Court's judgment of conviction and sentence is affirmed.

9

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur. Wright, J., not sitting.

COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Assistant Public Advocate
Department of Public Advocacy
200 Fair Oaks Lane, Suite 500
Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Matthew Robert Krygiel
Assistant Attorney General
Office of the Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, Kentucky 40601