**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Henry Albert GEELAN,**
**Defendant-Appellant.**

**No. 74–2822.**

United States Court of Appeals,
Ninth Circuit.

July 25, 1975.

David M. Rothman (argued), Beverly Hills, Cal., for defendant-appellant.

Steven D. Rathfon, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Henry Geelan appeals from the District Court's denial of his motion to dismiss for lack of a speedy trial.

On March 26, 1968, the Bank of America in Cucamonga, California, was robbed. On the next day, Geelan was arrested near Wittman, Arizona, by deputies of the Mohave County Sheriff's Office. They arrested him on an Arizona warrant charging him with robbery in Phoenix on March 15, 1968.

On April 1, 1968, a federal detainer was placed against Geelan, and on May 1, 1968, the federal grand jury for the Central District of California indicted Geelan and Harold Hemphill for the March 26th robbery in Cucamonga.[1]

On September 19, 1968, the Superior Court of Maricopa County, Arizona, declared Geelan incompetent to stand trial on the state robbery charge and committed him to the Arizona State Hospital. After more than four and three-fourths years, Geelan was apparently found competent by hospital authorities because on July 18, 1973, he was released from the hospital to the custody of the Sheriff of Maricopa County.

On April 17, 1974, the state robbery charge was dismissed and Geelan was remanded to the custody of the United States Marshal in Phoenix. He was later brought to Los Angeles.

On May 28, 1974, Geelan was arraigned in United States District Court in Los Angeles on the federal bank robbery charge; he pleaded not guilty. The Court appointed a psychiatrist to examine Geelan.

On June 24, 1974, on the basis of the psychiatrist's report, the Court and all counsel agreed that Geelan was not competent to stand trial. The Court denied Geelan's motion to dismiss the indictment for lack of a speedy trial, but authorized this interlocutory appeal from that denial. The Court then committed Geelan to the federal hospital in Springfield, Missouri, and ordered a report on his condition within six months.

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), adopted a balancing test for speedy trial cases. The Court identified four factors to be considered in each case: length of delay, defendant's assertion of his right, reason for the delay, and prejudice to the defendant.

Applying these factors to the circumstances of this case, we hold that Geelan's right to a speedy trial has been violated.

### I.

 Length of delay acts as a triggering mechanism. Unless there is a delay which is presumptively prejudicial, there is no need to inquire further. *Barker v. Wingo, supra.* We believe that the delay here of more than six years between indictment and arraignment is presumptively prejudicial. *See United States ex rel. Little v. Twomey*, 477 F.2d 767, 770 (7th Cir. 1973).

### II.

 During the six-year period, Geelan never asserted his right to a speedy trial. In some circumstances, failure to assert this right may constitute waiver. *See, e.g., Barker v. Wingo, supra,* 407 U.S. at 534, 92 S.Ct. 2182. But a waiver must be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

 Here, Geelan could not have knowingly waived his right to a speedy

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Hemphill was found guilty on September 10, 1968, and on January 14, 1969, was sentenced to ten years imprisonment.

trial. Throughout the period of delay, he was an adjudicated incompetent and could not knowingly and intelligently waive any right. *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

## III.

The Government contends that Geelan's incompetence to stand trial justifies the delay. Otherwise, the Government argues, it would be forced either to try an incompetent in violation of his due process rights or to dismiss the indictment for denial of a speedy trial.

■■ The Government has a duty to bring a defendant to trial as promptly as possible, *Barker v. Wingo, supra* at 529, 92 S.Ct. 2182; *Dickey v. Florida*, 398 U.S. 30, 38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and it may not justify a delay merely by citing the defendant's incompetence. The Government must carefully and vigilantly protect the interests of both the incompetent individual and society.

■ The due process clause precludes conviction of a person while he is legally incompetent. *Pate v. Robinson, supra*, 383 U.S. at 378, 86 S.Ct. 836; *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The Government may, however, commit an incompetent defendant to an institution pending his regained competency.

■ In *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972), which involved Indiana's commitment statutes, the Supreme Court placed substantive constitutional limitations on a state's power to commit an incompetent defendant:

" . . . [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine wheth-

er there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. . . . Furthermore, even if it is determined that the defendant probably soon will be able to stand trial his continued commitment must be justified by progress toward that goal."

The federal government's power under its commitment statutes, 18 U.S.C. §§ 4241–4248, is subject to these constitutional limitations.

■ A state is required to make a diligent, good-faith effort to bring a defendant to trial even though he is in a federal prison. *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). The duty owed to a state or federal defendant is not less because he is in the custody of another jurisdiction, whether in prison or in a mental hospital. We think that the federal prosecutor here owed the same duty to Geelan, who was in a state hospital, that he would owe to an incompetent defendant in a federal hospital.

If Geelan had been in a federal hospital, federal authorities would have had the duty to determine whether there was a "substantial probability that he [would] attain . . . capacity in the foreseeable future" and that he was making progress toward that goal. *Jackson v. Indiana, supra*, 406 U.S. at 738, 92 S.Ct. at 1858.

We think that the United States Attorney here abdicated his responsibility to Geelan. After Geelan's commitment to the Arizona State Hospital, the prosecutor apparently forgot about him until he was notified, because of a detainer, that Geelan was about to be released from state custody.

At a minimum, the United States Attorney should have required periodic reports on Geelan's condition from the Arizona State Hospital.[2]

 We think that the United States Attorney was entitled to rely initially on the finding by the Arizona court that Geelan was incompetent to stand trial. It would be unnecessarily duplicative to require a separate federal competency hearing at the outset.

 The record on appeal does not reveal how frequently Geelan's competency was evaluated at the Arizona State Hospital or what reports on his condition the Hospital made to the state prosecutor. Even if we assume that Geelan's interests and rights were fully protected by Arizona,[3] we believe that the United States Attorney violated his duty to Geelan by failing to require regular reports on his condition.

 When Geelan remained incompetent for a substantial period, the United States Attorney should have made an effort to determine when, if ever, Geelan would become competent. The obligations of the United States Attorney increased with the passage of time. Four and three-fourths years in a mental hospital is a long time to await the regaining of competency by a defendant, and, under the circumstances of this case, the United States Attorney should have dismissed the indictment.

### IV.

 We believe that Geelan was prejudiced by the delay here. If he were to be tried, probably his principal defense to the federal bank robbery charge would be insanity. That defense has been severely prejudiced by the lapse of more than seven years.

"When prosecution is delayed because of the accused's mental incapaci-

ty to stand trial, the difficulty of determining whether the accused was mentally responsible at the time of the crime is increased. Passage of time makes proof of any fact more difficult. When the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced." *Williams v. United States*, 102 U.S.App.D.C. 51, 250 F.2d 19, 22–23 (1957).

The order denying Geelan's motion to dismiss the indictment for lack of a speedy trial is reversed and the case is remanded to the District Court for action consistent with this opinion.

---

2. We are informed that the federal hospital in Springfield, Missouri, automatically issues a report on each incompetent defendant every three months.

3. The state charges against Geelan were dismissed after his release from the hospital.