**UNITED STATES of America, Appellee,**

v.

**Donald C. GRAHAM, Appellant.**

**No. 75–3280.**

United States Court of Appeals, Ninth Circuit.

June 28, 1976.

William M. Goodman, Asst. Federal Public Defender (argued), of San Francisco, Cal., for appellant.

Larry Edelman, Asst. U. S. Atty. (argued), of San Francisco, Cal., for appellee.

## OPINION

Before BARNES, WRIGHT and SNEED, Circuit Judges.

BARNES, Senior Circuit Judge:

Graham was convicted in the federal district court of violating 18 U.S.C. § 1343, Fraud by Wire. He appeals, asserting that the trial court improperly denied his motion to dismiss on speedy trial grounds. The sole issue presented on appeal is whether the delay of approximately 12 months in bringing the defendant to trial deprived him of his sixth amendment right to a speedy trial. We hold it did not.

The pertinent facts follow. Graham was indicted on August 21, 1974. Unknown to the federal officials, he was in state custody under an assumed name. Due to this misrepresentation on Graham's part, the federal marshal's office did not locate him until September 16, 1974, at which time it placed a detainer for him with the Marin County (California) Sheriff's Office. On November 9, 1974, Graham was sent to the Vacaville Medical Facility, located in Solano County, for a medical examination and did not return to Marin County until January 1, 1975. No action was taken to bring Graham to federal court until February 5, 1975, when a writ of habeas corpus *ad prosequendum* was served on Marin County authorities. By that time, the appellant had been transferred to Alameda County (California) to answer to state criminal charges pending there. Graham pleaded guilty in Alameda County Superior Court on May 7, 1975, and was sentenced there on June 2, 1975. On June 10, 1975, the United States Attorney served a writ for Graham's custody to the

Alameda County authorities and soon thereafter obtained custody of him. Graham was brought to trial and convicted by a jury on September 3, 1975.

In support of his argument that he was denied his constitutional right to a speedy trial, Graham primarily relies upon two recent Supreme Court decisions, *Smith v. Hooey*[1] and *Barker v. Wingo*.[2] In *Smith*, the defendant was incarcerated in another jurisdiction during the six-year post-indictment delay. Despite his many attempts to gain a speedy trial in that jurisdiction, state officials made *no* efforts to bring him to trial. In holding that the six-year delay must be considered in determining whether there had been a speedy trial violation, the Court stated that upon a defendant's demand, the state has a constitutional duty "to make a diligent, good-faith effort" to bring him to trial.[3]

■ In *Barker*, the Supreme Court promulgated standards by which the speedy trial guarantee is to be judged. The Court adopted a balancing approach in which the conduct of the government and the defendant are weighed against one another on an *ad hoc* basis. Four factors are to be considered in this balancing process: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[4] The Court made it manifestly clear in *Barker* that it regarded none of these four factors *alone* as either a necessary or a sufficient condition to support a finding that there has been a speedy trial deprivation. Rather, they are related and must be considered together.[5]

■ Applying the above principles to the facts of this case, we begin our examination with the length of delay. As both the Supreme Court and this Court have acknowledged, "[t]he length of the delay is to some extent a triggering mechanism."[6] Unless the delay is presumptively prejudicial, we need not inquire into the other factors of the balancing approach. The length of the delay that requires such an inquiry is dependent upon the facts and circumstances of each case.[7] Here, the delay was approximately 12 to 12 and ½ months. The government concedes on appeal that "[c]learly, the length of delay is sufficiently long as to justify further inquiry."[8]

■ We next consider the reason for the delay. Upon reviewing the record, we

1. 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

2. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Other Supreme Court decisions which Graham relies upon on appeal are *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

3. 393 U.S. at 383, 89 S.Ct. at 579.

4. 407 U.S. at 530, 92 S.Ct. at 2192.

5. *Id.* at 533, 92 S.Ct. at 2193. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* For law review articles which consider the balancing approach in greater detail, *see, e. g.,* Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stanford Law Review 525, 539–41 (1975); Godbold, *Speedy Trial—Major Surgery for a National Ill*, 24 Alabama Law Review 265, 274–88 (1972); Steinberg, *Right to Speedy Trial; The Constitutional Right and its Applicability to the Speedy Trial Act of 1974,* 66 Journal of Criminal Law & Criminology 229, 230–32 (1975); Comment, *Devitalization of the Right to a Speedy Trial*, 5 St. Mary's Law Journal 106, 111–14 (1973); Comment, *Right to Speedy Trial: Maintaining a Proper Balance Between the Interests of Society and the Rights of the Accused*, 4 U.C.L.A.— Alaska Law Review 242, 243–46 (1974).

6. 407 U.S. at 530, 92 S.Ct. at 2192; *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976); *see United States v. Geelan*, 520 F.2d 585, 587 (9th Cir. 1975).

7. 407 U.S. at 530–31, 92 S.Ct. at 2182; *United States v. Simmons, supra,* 536 F.2d at 831; *United States v. Geelan, supra,* 520 F.2d at 587; *Paine v. McCarthy*, 527 F.2d 173 (9th Cir. 1975).

8. Government's Brief at 7.

conclude that some portions of the delay were due to the government's negligence. Other periods of the delay, however, were caused by the defendant's actions. Following the Supreme Court holdings in *Moore v. Arizona*[9] and *Smith v. Hooey*, we ask the following question: Although incarcerated in another jurisdiction, "[i]n the face of petitioner's repeated demands, did the State discharge its 'constitutional duty to make a diligent, good-faith effort to bring him [to trial].'?"[10] For the period prior to September 16, 1974, despite good-faith efforts, the government could not locate Graham because he was in state custody in Marin County under an assumed name. After June 10, 1975, when the writ of habeas corpus *ad prosequendum* was served on Marin County authorities, the United States Attorney diligently arranged for Graham's federal case to be tried. Under *Smith* and *Moore*, these periods prior to September 16, 1974, and after June 10, 1975, are not to be charged against the government. During the period between September 16, 1974, and June 10, 1975, much of the delay, as acknowledged by the government at oral argument, was attributed to the government's negligence. The government took no action to bring Graham to federal court until the February 5, 1975 service of a writ upon Marin County authorities. By that time, he had been transferred to another county to stand trial. The government took no further action until June 10, 1975. Some of this inaction may have been due to complications arising from Graham being transferred from one state county to two others. But by and large, this approximate nine-month delay occurred because the government failed to exercise diligent good-faith efforts in bringing him to trial in the federal district court. We therefore conclude that the government was negligent. Although given less weight than deliberate misconduct, such behavior "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[11]

With respect to the defendant's assertion of his right to a speedy trial, the district court found that Graham did assert this right.[12] In *Barker*, the Supreme Court held that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of this right."[13]

The last factor to be examined is prejudice to the accused. The Supreme Court has identified three interests of the accused which the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[14] Further, the Supreme Court in *Moore v. Arizona* made it clear that a finding of prejudice is not essential to establish a federal speedy trial claim.[15]

▮ Graham argues that he has suffered undue and oppressive pretrial incar-

---

**9.** 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

**10.** *Id.* at 26, 94 S.Ct. at 190; 393 U.S. at 383; 89 S.Ct. 575; *see United States v. Geelan, supra*, 520 F.2d at 588.

**11.** *Barker v. Wingo, supra*, 407 U.S. at 531, 92 S.Ct. at 2192.

**12.** Reporter's Transcript at 16.

**13.** 407 U.S. at 531–32, 92 S.Ct. at 2192–93. The Court also emphasized that "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. But this right cannot be presumptively waived. *Id.* at 525–26, 92 S.Ct. 2182; *see United States v. Geelan, supra*, 520 F.2d at 587–88.

**14.** *Id.* at 532, 92 S.Ct. at 2193; *see United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *United States v. Simmons, supra*, 536 F.2d at 831; *United States v. Dreyer*, 533 F.2d 112, 115 (3rd Cir. 1976); *Paine v. McCarthy*, 527 F.2d 173, 176 (9th Cir. 1975); *United States v. Brown*, 172 U.S.App. D.C. 92, 520 F.2d 1106, 1110–13 (1975); *United States v. Roberts*, 515 F.2d 642, 645 (2nd Cir. 1975); *United States v. Jackson*, 508 F.2d 1001, 1004 (7th Cir. 1975).

**15.** 414 U.S. at 26, 94 S.Ct. 188; *see* 407 U.S. at 533, 92 S.Ct. 2182; *Hoskins v. Wainwright*, 485 F.2d 1186, 1194 (5th Cir. 1973).

ceration because, due to the government's negligent delay in bringing him to trial, he has lost the possibility of receiving a sentence concurrent with the state court sentences. Unless time is served in federal *custody*, it does not count as credit for time served under a federal sentence.[16] As the Supreme Court has stated in both *Smith v. Hooey* and *Strunk v. United States*: "[T]he possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." In this case, Graham was deprived of this possibility. Such a finding, however, does not require us to conclude that there has been a speedy trial violation. Rather, this factor is merely another element to be considered in the balancing test.[17]

Graham further argues that he has suffered anxiety and strain which have been unduly exacerbated by the delay. Upon examining the record, however, we find nothing which differentiates the emotional strain experienced by Graham from other criminal defendants. Such conclusory allegations of general anxiety and strain could be made in connection with almost every criminal prosecution. We therefore hold that such allegations as are present here, "constitute a showing of minimal prejudice of a type normally attending criminal prosecution."[18]

The most important interest which the speedy trial right assures is to limit the possibility that the accused's defense will be impaired. This interest is of fundamental importance "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[19] Graham argues in conclusory terms only that the delay caused memories to fade, deprived him of his ability to gather evidence, and hindered his efforts to contact witnesses. He points to no facts which support this contention, nor do we on examining the record find any such support. In fact, the evidence is overwhelming that the delay in this case did not affect the integrity of the fact-finding process.

We therefore conclude that any prejudice Graham suffered by the delay was minimal.

In determining whether the district court erred in denying Graham's motion to dismiss on speedy trial grounds, we, like the district court, are troubled by the delay in this case.[20] The government's negligent

---

16. *See* 18 U.S.C. § 3568 which provides in pertinent part: "The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. . ."

In *United States v. Myers*, 451 F.2d 402 (9th Cir. 1972), we interpreted Section 3568 in the following manner:
"Under section 3568, the district judge was powerless to impose a federal sentence to run concurrently with any state confinement. The most the district judge could have done was to have recommended to the prison authorities that a federal sentence be made concurrent with or consecutive to state confinement. Prison authorities need not and do not always follow such recommendations. . ."

*Id.* at 404. In an accompanying footnote, we elaborated on the above interpretation:
"Under 18 U.S.C. § 4082(a) and (b), the Attorney General is charged with designating 'the place of confinement where the sentence shall be served.' That authority had been delegated to the Bureau of Prisons under 28 C.F.R. § 0.96. According to the circumstances of each case, the designation may or may not be to a state institution where the prisoner is already confined."
*Id.* at 404 n. 3; *see Hardy v. United States Board of Parole*, 443 F.2d 402 (9th Cir. 1971).

17. *See* 412 U.S. at 437–38, 93 S.Ct. 2260; 393 U.S. at 378, 89 S.Ct. at 577.

18. *United States v. Simmons, supra*, 536 F.2d at 832; *see Barker v. Wingo, supra*, 407 U.S. at 532, 534, 92 S.Ct. 2182; *United States v. Annerino*, 495 F.2d 1159, 1163–64 (7th Cir. 1974); *United States v. DeTienne*, 468 F.2d 151, 157–58 (7th Cir. 1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973).

19. 407 U.S. at 532, 92 S.Ct. at 2193; *see Stuart v. Craven*, 456 F.2d 913, 915–16 (9th Cir. 1972).

20. *See* Reporter's Transcript at 13 where the district judge stated: "The delay in this case upsets me very much, because it does bring into play the defendant's Sixth Amendment right to a speedy and public trial . . . .."

conduct makes this case a close one. With the implementation of the Speedy Trial Act's time periods in the fairly near future, the government should be aware that negligent conduct in bringing an accused to trial will not be tolerated. As we stated in our very recent decision in *United States v. Simmons,*[21] "the Speedy Trial Act clearly provides that a dismissal with prejudice may occur even though there has been no constitutional violation."[22] But here we are dealing with the constitutional right to a speedy trial. As such, we must agree with the district court and hold that Graham has not been denied his constitutional speedy trial right. We base our holding on the following criteria: (1) The government's conduct here was negligent rather than deliberate. Such behavior, when based upon inadvertence, is not to be weighed as heavily as deliberate delay. (2) The length of delay was not impermissibly long, given the facts and circumstances present here. We must remember that the situation was complicated by the defendant's difficulties in the state courts, his transfer from one state county to another for trial, his use (by his own choice) of an assumed name, and his treatment at the Vacaville Medical Facility. In *Barker,* the Supreme Court held that there was no speedy trial violation even though the length of the delay exceeded five years. In comparison, the delay here was only a little over a year. We do not mean to imply, however, that a delay of this period can never constitute a sixth amendment violation. We simply hold that under the facts and circumstances of this case, the length of the delay was not impermissibly long. (3) The defendant did not incur any serious prejudice by the delay. Although we do not base our decision on this ground alone, it is by far the most important variable here. Upon our examination of the record, we conclude that the delay did not impair the defendant's ability to defend himself.

Based upon the above factors, we hold that the district court was correct in denying the defendant's motion to dismiss on constitutional speedy trial grounds. Accordingly, the judgment of the district court is *affirmed.*

---

21. 536 F.2d 827 (9th Cir. 1976).

22. *Id.* at 836. For law review articles which discuss the Speedy Trial Act, especially with regard to its effect upon the constitutional right to a speedy trial, *see* Steinberg, *Right to Speedy Trial: The Constitutional Right and its* *Applicability to the Speedy Trial Act of 1974,* 66 Journal of Criminal Law & Criminology 229 (1975); Note, *The Speedy Trial Act of 1974: Defining the Sixth Amendment Right,* 25 Catholic University Law Review 130 (1975).