# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-2971

LARRY K. DANKS,

*Petitioner-Appellant,*

v.

CECIL DAVIS, Superintendent,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:01 CV 0720 AS—**Allen Sharp**, *Judge.*

_____

ARGUED DECEMBER 17, 2003—DECIDED JANUARY 21, 2004

_____


Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* A gas station in LaPorte County, Indiana was robbed twice in 1978, first on May 11 and then again on May 19. During each robbery, the attendant was shot and killed. Larry Danks told police he was responsible for both attacks, but was charged initially only with the May 19 robbery and murder. An Indiana court found him incompetent to stand trial, committed him to a state hospital, and, after he regained his competency 5 years later, tried and convicted him of the May 19 robbery and murder. Eventually he was also charged with and pleaded guilty to the May 11 murder.

Danks sought post-conviction relief arguing that Indiana violated his right under the Sixth Amendment to a speedy trial for the May 11 murder by waiting nearly 6½ years to charge him, but the state courts rejected his argument. He then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 based upon the same argument. The district court denied his petition because Danks did not show that the state courts deviated from Supreme Court precedent in rejecting his speedy trial argument, and we affirm.

Police detained and questioned Danks after the May 19 robbery and murder. During questioning he initially told police that he acted alone during both robberies, but later told police that "Tony" accompanied him during the first and was the one who actually shot and killed the attendant. Based upon his confession, police obtained an arrest warrant for Danks, which they executed while Danks was still being detained. Police, however, were unable to locate "Tony," and Danks refused to give them Tony's last name.

Although Danks' arrest warrant described his involvement in both crimes, the prosecutor charged him only with the May 19 robbery and murder. Before trial on the May 19 crimes, Danks requested a psychiatric evaluation and, after a competency hearing, the court found him incompetent to stand trial. Five years later, doctors at the Logansport State Hospital determined that Danks had become competent, and the criminal proceedings for the May 19 robbery and murder resumed. His trial began about 6 months after his release from the hospital. At trial he raised an insanity defense, but the jury rejected his defense and found him guilty. Jurors recommended that he be sentenced to death, but the court rejected the recommendation and instead sentenced him to 46 years' imprisonment.

During Danks' trial for the May 19 robbery and murder, the prosecutor for the first time charged Danks with the

May 11 murder—6 months after his release from the hospital and 6½ years after the murder. Danks pleaded "guilty but mentally ill" in exchange for the state's agreement not to pursue the death penalty. The court sentenced Danks to 60 years' imprisonment to run concurrent to his 46-year term for the May 19 crimes, with credit for time served dating back to his arrest in 1978.

A few months after he was sentenced for the May 11 murder, Danks filed a petition for post-conviction relief with the state trial court. In it, Danks alleged several constitutional violations, including the violation of his right to a speedy trial. The petition languished for over 10 years. Eventually the trial court held a hearing and concluded that the delay of 6½ years between when the state arrested Danks for the May 11 murder and when it finally charged him was "extraordinary." But the court held that most of the delay was attributable to Danks' own incompetency. As for the remaining delay, the court held that under *Doggett v. United States*, 505 U.S. 647 (1992), and *Barker v. Wingo*, 407 U.S. 514 (1972), Danks could not establish that the delay had prejudiced him, especially in light of his confession. Accordingly, the trial court denied Danks' petition.

Danks appealed, arguing that the trial court failed to recognize several ways in which the state's delay prejudiced his defense. For instance, he argued that the delay precluded him from investigating "Tony," the man Danks told police was the actual killer. He also argued that his defense was prejudiced because the scene of the crime had been razed leaving him unable to investigate the gas station's layout, and because one of the doctors who treated him at the state hospital could no longer testify about his mental health because he was dead.

But the appellate court held that Danks had not established prejudice. It held that Tony's existence was imma-

terial because Danks would still be liable for murder even if he had only aided and abetted Tony. As for the razing of the gas station, the court held that Danks had failed to explain how the gas station's destruction had hindered his defense. Finally, the court concluded that Danks had failed to explain how he was prejudiced by his doctor's death "given the extensive involvement of mental health personnel in this proceeding and Danks' treatment, . . . a subject matter upon which there was abundant evidence." The appellate court therefore agreed with the trial court that Danks was not entitled to post-conviction relief and affirmed. Indiana's supreme court denied his request for a transfer.

After exhausting his state remedies, Danks filed with the district court his *pro se* petition for a writ of habeas corpus. The state urged the court to deny Danks' petition because the Indiana courts had reasonably applied *Doggett* and *Barker* in concluding that Danks' defense had not been prejudiced. In reply, Danks argued that under *Doggett* he did not need to establish prejudice because the 6½-year delay was extraordinary. Alternatively he argued that he had been prejudiced by the state's failure to charge him in 1978 because, as a result, no counsel had been appointed to represent him and preserve evidence that could have established he was insane at the time of the murder. In denying the writ, the district court reasoned that Danks had not identified any evidence lost over time that could have helped his defense, and therefore the Indiana courts had reasonably applied *Barker*. The district court denied his request for a certificate of appealability, but this court granted him one on his speedy trial claim.

Although we have held that an unconditional guilty plea waives altogether a Sixth Amendment speedy trial claim, *see United States v. Gaetner*, 583 F.2d 308, 311 (7th Cir. 1978), the state has not pressed the point and so we address Danks' claim on the merits. In order to succeed,

Danks needed to show that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was an "unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2534-35 (2003); *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003). Unreasonable is more than just incorrect or erroneous, *Wiggins*, 123 S. Ct. at 2535; *Johnson*, 349 F.3d at 1034, and therefore federal courts defer to a state court's application of Supreme Court precedent as long as it is "minimally consistent with the facts and circumstances of the case," *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (internal quotations and citation omitted), *cert. denied*, 123 S. Ct. 2220 (2003).

The Indiana court relied on the four-factor balancing test set forth in *Barker* to determine whether Danks' Sixth Amendment right to a speedy trial was violated. The four *Barker* factors are: 1) the length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. Later, the Court held in *Doggett* that if under the first factor the length of the delay is no longer than the ordinary delay in bringing a case to trial, then the remaining three *Barker* factors need not be examined. *Doggett*, 505 U.S. at 651-52. However, if the delay is longer than ordinary, the delay is considered "presumptively prejudicial," and the four *Barker* factors must be balanced. *Id.*

Danks asserts that the state court unreasonably applied *Barker* and *Doggett* by requiring him to establish actual prejudice even though he established presumptive prejudice. But establishing presumptive prejudice does not relieve a defendant from the burden of showing actual prejudice; rather, as discussed above, it is merely a threshold

showing that the defendant must make before the remaining *Barker* factors become relevant. *Doggett*, 505 U.S. at 656 ("presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria"). Therefore, the state court did not unreasonably apply *Doggett* and *Barker* when it required Danks to establish actual prejudice.

Alternatively Danks argues that under *Doggett*, the state court should not have required him to demonstrate actual prejudice because the length-of-delay factor weighed so heavily in his favor. In support, he likens his 6½-year delay to the delay in *Doggett*, where the government lost track of the defendant until 8 years after his indictment on drug charges. The Supreme Court concluded in *Doggett* that where the defendant's claim of presumptive prejudice was not extenuated by his own acquiescence or persuasively rebutted, the defendant did not need to show particularized prejudice in light of the extraordinary interval between his indictment and arrest. *Doggett*, 505 U.S. at 657-58. But the Indiana appellate court concluded that Danks' incompetence was responsible for 5 of the 6½ years the state delayed charging him, *Danks v. State*, 733 N.E.2d 474, 482 (Ind. Ct. App. 2000); its conclusion that Danks' delay was not as extraordinary as the delay in *Doggett* is therefore not unreasonable. *See also United States v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996) (period of incompetency attributable to defendant, not the state); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (period of evaluating defendant's incompetency not attributable to the state); *United States v. Jackson*, 542 F.2d 403, 407 (7th Cir. 1976) (same).

Danks asserts that the state court should have concluded that even though he was incompetent during most of the delay, the entire delay should nevertheless be attributed to the state because it failed to continually evaluate his

competency in order to bring charges against him as early as possible. But Danks fails to explain how the state court decision strayed from Supreme Court precedent, citing only the Ninth Circuit's decision in *United States v. Geelan*, 520 F.2d 585, 588-89 (9th Cir. 1975), to support his argument. Even under *Geelan*, however, Danks cannot establish that his period of incompetency is attributable to the state. In *Geelan*, the prosecutor failed to make any effort during the defendant's 5-year commitment to check on his competency because "the prosecutor apparently forgot about him." *Id.* at 589. Danks contends that Indiana also forgot about him, but according to the state court's docket the court received regular reports about Danks from the hospital. The court also held a hearing in 1983 to determine whether he had regained his competency yet, but determined that he had not.

Danks also contends that the state court erred when it balanced the *Barker* factors. Specifically, he argues that the state court should have balanced the actual prejudice factor in his favor. But as discussed above, this court reviews whether the state court applied the correct law, not whether in applying the law it reached the correct decision. *Wiggins*, 123 S. Ct. at 2535; *Johnson*, 349 F.3d at 1034.

Even if our scope of review included determining whether the state court struck the proper balance between the *Barker* factors, Danks has nonetheless failed to establish that the court should have weighed the prejudice factor in his favor. Danks argues that because the scene of the crime had since been razed he could no longer determine whether the actual layout of the gas station "comported" with his description to police in 1978, which "could have shed some light on Danks' perception of reality at the time." He also argues that a doctor who treated him while he was committed had since died and, as a result, expert insight into the state of his sanity in 1978 had been lost. But Danks had the

opportunity—and, more importantly, the incentive—to preserve evidence that he was insane in 1978 after he was charged that year with the May 19 murder *at the same gas station*. He also presented evidence of his insanity at his trial for the May 19 murder, but jurors rejected it and concluded that he had been sane.

The only evidence Danks points to which might have allowed him to fare better asserting an insanity defense to the May 11 murder is evidence that his alleged accomplice "Tony" was actually just an insane delusion. But Danks undermined any argument that Tony was a delusion when, at his sentencing hearing in 1986 for the May 11 murder, he maintained that Tony was real and continued to refuse to give his last name in order to protect him:

> He has a wife, two kids. He don't mess around. He don't get dru—he don't get high no more. My life is already messed up why, how can I mess his up after eight years.

Danks has therefore failed to show that the state court erred in concluding that his defense suffered no prejudice due to the delay in charging him with the May 11 murder.

For the preceding reasons, we AFFIRM the judgment of the district court.

A true Copy:

　　　　Teste:

　　　　　　　　　　_____
　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*